UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YUEMING JI (A# 220-546-175), | No.  1:26-cv-03442 DJC SCR |
| Petitioner, | |
| v. | FINDINGS & RECOMMENDATIONS |
| WARDEN, et al., | |
| Respondents. | |

Petitioner is a federal immigration detainee proceeding through counsel in this habeas corpus action filed pursuant to 28 U.S.C. § 2241.  District Judge Calabretta referred the matter to the undersigned pursuant to Local Rule 302(c)(17).  ECF No. 3.

**FACTUAL AND PROCEDURAL HISTORY**

**I.      Original § 2241 Petition**

The undersigned construes this petition as seeking to enforce the judgment in Ji v. Noem, et al., No. 1:26-cv-001186 DJC CSK, 2026 WL 485287 (E.D. Cal. Feb. 20, 2026).  There, District Judge Calabretta granted the § 2241 petition after determining that Petitioner's re-detention without bond after his release on humanitarian parole violated procedural due process.  Ji, 2026 WL 485287, at *2-*3.  Due to Petitioner's various arrests and failure to address them in his briefing, Judge Calabretta concluded that the proper remedy was a post-deprivation hearing:

Within seven (7) days of this Order, Petitioner shall be

1

> afforded a constitutionally adequate bond hearing before an Immigration Judge. At this hearing, the Government shall bear the burden of establishing, by clear and convincing evidence, that Petitioner poses a danger to the community or a risk of flight, and Petitioner shall be allowed to have counsel present.
>
> In the event Petitioner is "determined not to be a danger to the community and not to be so great a flight risk as to require detention without bond," the Immigration Judge should consider Petitioner's financial circumstances and alternative conditions of release[.]

Id. at *2-*3, n.1.

## II.    Court-Ordered Post-Deprivation Hearing

The court-ordered bond hearing occurred on February 26, 2026, before Immigration Judge ("IJ") Katie Mullins.[1]  ECF No. 10 (transcript).  Petitioner was represented by counsel, and the proceedings were translated by a Mandarin-English language interpreter.  Id. at 2.  The IJ declared at the start that the "Department [of Homeland Security] bears the burden to prove by clear and convincing evidence that respondent is either a danger or such a significant flight risk that bond should be denied on that basis."  Id. at 4:4-7.  The IJ admitted three exhibits offered by the government: (1) a copy of Judge Calabretta's habeas order; (2) Petitioner's FBI Rap Sheet; and (3) Petitioner's Notice to Appear (Nov. 10, 2021).  Id. at 4:16-25.  Petitioner submitted several documents, including, *inter alia*, a letter of support from a potential sponsor, a letter from a friend regarding the facts of Petitioner's arrests, and police department records pertaining to his arrests.  See ECF No. 1-1.

Counsel for the government began by referencing Petitioner's unlawful entry on July 25, 2021.  ECF No. 10 at 5:1.  She then acknowledged Petitioner's asylum application filed on December 16, 2025, but expressed he was barred due to the one-year filing deadline.  Id. at 6:1-4.  Addressing Petitioner's flight risk, counsel argued that a letter from a willing residential sponsor carried little weight since it was "not certain" how Petitioner could relocate to Georgia upon release when he has resided in Northern California and his arrests occurred in Southern California.  Id. at 6:4-22.

---

[1]  Petitioner appeared for the court-ordered hearing on February 25, 2026, but agreed to continue it for one day to allow his attorney time to prepare.  ECF No. 7-7.

2

Regarding danger, counsel for the government pointed to Petitioner's three arrests: (1) infliction of corporal injury to a spouse or cohabitant, Cal. Penal Code § 273.5(a) (May 5, 2023); (2) infliction of corporal injury to a spouse or cohabitant, Cal. Penal Code § 273.5(a), vandalism, Cal. Penal Code § 594(a)(2), and damaging wireless communication device, Cal. Penal Code § 591.5 (Dec. 25, 2023); and (3) infliction of corporal injury to a spouse or cohabitant in violation of Cal. Penal Code § 273.5(a) (July 1, 2025).  ECF No. 10 at 6:22-25, 7:1-18.

Petitioner's counsel addressed his arrests as follows:

> True that my client has been arrested three times . . . [in] less than [a] two year period.  Actually, . . . in all those three incidents . . . [t]he alleged victim is the same one, his ex-girlfriend.  Given the fact that he was arrested for such a short time for three times by the same place, but as the DA still declined to prosecute the case for lack of evidence, the fact is that my client did not attack his ex-girlfriend. He only acted in self-defense.  Next, the reason why he all those three times of arrest, he has not been either charged or the case was dismissed.  But as . . . to the flight risk, I would argue that his proposed sponsor, his current girlfriend's mom, a U.S. citizen in Georgia.  So my client is waiting to relocate to Georgia after his release.  So I would argue that the government does not establish by clear and convincing evidence that Mr. Ji has either flight risk or danger to community.

ECF No. 10 at 8:1:12.  In rebuttal, counsel for the government argued that his three arrests in two years show a lack of rehabilitation and a risk of danger.  Id. at 8:20-23.

After conclusion of argument, the IJ issued an oral ruling:

> I am exercising discretion pursuant to [Immigration Court Practice Manual] Section 9.3(e)(6) to not hear witness testimony. The court finds the evidentiary record sufficiently developed for the court to make a fully informed decision, and I am finding that the Department has met its burden to show both danger and flight by clear and convincing evidence, and the court is denying bond.  The appeal deadline is March 30, 2026.  Again, the appeal deadline is March 30, 2026.

ECF No. 10 at 8:25, 9:1-5.  The IJ then informed Petitioner of his appeal rights and confirmed his understanding.  Id. at 9:14-19.

### III.   Written Bond Memorandum

On March 30, 2026, the IJ issued a bond memorandum to facilitate the BIA's review of Petitioner's appeal of her bond denial.  ECF No. 1-1 at 36-40.  The IJ summarized her oral ruling,

3

noting both that the government bore the burden by clear and convincing evidence and that she exercised her discretion not to hear testimony from Petitioner pursuant to Immigration Court Practice Manual Section 9.3(e)(6).  Id. at 36-37.  The IJ then identified the relevant factors from Matter of Guerra, 24 U. & N. Dec. 37, 39 (BIA 2006) as the legal framework for her analysis.  Id. at 37.

The IJ wrote that based on Petitioner's three arrests in the short time he has resided in the United States, she "easily concludes" the Department met its burden of proving dangerousness by clear and convincing evidence.  ECF No. 1-1 at 38.  Addressing Petitioner's most recent July 2025 arrest, the IJ noted Petitioner's evidence that "the district's attorney's office had, to date, declined to formally file charges" but emphasized that "the documents do not reflect *why* the district attorney had declined to file charges as of that date, and the Court is largely left to speculate as to whether the district attorney's decision on this issue relates to Respondent's factual guilt or innocence[.]"  Id. at 37 (emphasis in original).  She added that Petitioner's record of release from the Alhambra Police Department reflecting the absence of charges states that it does not preclude further investigation of subsequent filing of charges.  Id. at 38.

The IJ then made an additional, independent finding that the government had established Petitioner's flight risk by clear and convincing evidence.  The IJ cited Petitioner's unlawful entrance into the country in 2021 and then addressed his lack of lawful status:

> Respondent has stated an intent to seek humanitarian protection in the United States in the form of asylum, withholding of removal, and protection under the Convention Against Torture.  However, "[e]ven for aliens who are found to have a credible fear, a grant of asylum is uncertain, in part because the legal standard for establishing eligibility for asylum is higher than that for credible fear."  [Matter of R-A-V-P-, 27 I&N Dec. 803, 805 (BIA 2020)].  And, as proffered by Department counsel (which proffer Respondent's counsel did not meaningfully rebut) during oral argument, Respondent entered the United States in 2021 and did not file his asylum application with the Immigration Court until 2025, and as such, his asylum application may be barred by the one-year filing deadline.  See INA § 208(a)(2)(B).  Though he may nonetheless be eligible to seek withholding of removal and protection under the Convention Against Torture, the legal standards applicable to those forms of relief are narrower than those applicable to asylum claims.

Id. at 39.  The IJ then listed evidence in Petitioner's favor, including the letter from his proposed

4

sponsor, but ultimately determined the totality evidence supported a finding that the government had met its burden as to flight risk.[2]  Id.  Petitioner appealed the IJ's ruling to the BIA on March 26, 2026.  ECF No. 1 at 5-6, ¶ 15.

### IV.    Current § 2241 Petition

Petitioner filed the instant § 2241 petition on May 4, 2026.  ECF No. 1.  Petitioner alleges that the IJ's bond memorandum dated March 30, 2026, violates the INA and the Due Process Clause for five reasons: (1) misapplication of the clear-and-convincing standard as to dangerousness;[3] (2) erroneous treatment of the Alhambra Police Department's "Detention Only" determination; (3) erroneous discounting of character witness declaration; (4) failure to credit photographic evidence of Petitioner's injuries; and (5) improper importation of the asylum filing deadline into the flight-risk analysis.  Id. at 8-10.  Petitioner further argues that exhaustion would cause irreparable injury because his appeal to the BIA will take six to twelve months.  Id. at 6.  By way of relief, Petitioner seeks immediate release or, in the alternative, a new bond hearing within seven days at which Respondents bear the burden of proof by clear and convincing evidence.

Respondents oppose the petition and assert that Petitioner received a constitutionally adequate bond hearing.  ECF No. 7.  Respondents argue that the IJ properly applied the clear and convincing evidence standard in denying bond, and that Petitioner improperly asks this Court to reweigh in the guise of a constitutional challenge.  Id. at 6.  Respondents then conduct an analysis of the factors form Mathews v. Eldridge, 424 U.S. 319 (1976), to demonstrate that Petitioner received due process.  Id. at 6-9.  Respondents also allege that Petitioner must appeal to the BIA and thus failed to exhaust his administrative remedies.  Id. at 5-6.  Finally, if the Court grants

---

[2]  On May 8, 2026, a different IJ ordered Petitioner removed to China.  ECF No. 7-8.  Petitioner appealed the removal order to the BIA on May 15, 2026.  ECF No. 7-9.  Therefore, Petitioner's removal is not administratively final and his detention has yet to shift to 8 U.S.C. § 1231(a).  See 8 U.S.C. § 1231(a)(1)(B).

[3]  The petition erroneously and repeatedly states that the IJ applied the clear-and-convincing standard pursuant to the class relief ordered in Maldonado Bautista v. Santacruz, No. 5:25-CV-01873-SSS-BFM, --- F. Supp. 3d ----, 2025 WL 3289861, at *11 (C.D. Cal. Nov. 20, 2025).  See ECF No. 1 at 1-5, 7-8, 10.  To the contrary, the IJ applied that burden pursuant to Judge Calabretta's order granting Petitioner's original § 2241 petition.  See Ji, 2026 WL 485287, at *3.

relief, Respondents ask the Court to order another bond hearing instead of Petitioner's immediate release.  Id. at 9-10.

Petitioner filed a reply in which he reiterates that requiring exhaustion would cause irreparable harm and that the IJ misapplied the clear-and-convincing standard.  ECF No. 9 at 4, 7-8.  However, Petitioner raised several wholly new claims and arguments, including that his now-prolonged detention and re-detention on October 2, 2025, without evidence of materially changed circumstances separately and independently violated due process.  Id. at 2, 5-7, 8-9.

## ADMINISTRATIVE EXHAUSTION

The parties disagree as to whether Petitioner is required to exhaust his appeal to the BIA.  "The exhaustion requirement is prudential, rather than jurisdictional, for habeas claims."  Hernandez v. Sessions, 872 F.3d 976, 988 (9th Cir. 2017) (citing Singh v. Holder, 638 F.3d 1196, 1203 n.3 (9th Cir. 2011)).  Courts may require exhaustion as a prudential matter when "(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review."  Noriega-Lopez v. Ashcroft, 335 F.3d 874, 881 (9th Cir. 2003) (citation omitted).  The exhaustion requirement may be waived if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void."  Laing v. Ashcroft, 370 F.3d 994, 1000 (9th Cir. 2004).

Some judges of this judicial district, including the assigned district judge, have declined to require exhaustion in challenges to court-ordered bond hearings.  See Kumar v. Noem, No. 1:26-CV-01148-DJC-AC, 2026 WL 983129, at *3 (E.D. Cal. Apr. 13, 2026) (waiving exhaustion where respondents' alleged failure to apply burden expressed in court order "is an issue appropriately addressed by a motion to enforce the Court's order"); Hinostroza Velasquez v. Warden, California City Correctional Center, et al., No. 1:26-CV-03246-DJC-SCR, 2026 WL 1622903, at *2 (E.D. Cal. June 5, 2026) ("To the extent Petitioner challenges the constitutional adequacy of the bond hearing he received, the Court retains jurisdiction to enforce its prior

6

orders."); but see C.A.R.V. v. Wofford, No. 1:25-cv-01395-JLT-SKO, 2026 WL 241823, at *4 (E.D. Cal. Jan. 29, 2026) (declining to apply "prior order" carveout but excusing exhaustion on other grounds).  The undersigned agrees with Judge Calabretta's reasoning and finds that the Court's authority to enforce its order granting the underlying § 2241 petition renders exhaustion unnecessary here.

The undersigned separately finds that petitioner has adequately demonstrated that he will experience irreparable injury if he must await the outcome of his BIA appeal.  Petitioner filed his BIA appeal on March 26, 2026, and his counsel estimates that it will take six-to-twelve months to receive a decision.  See C.A.R.V., 2026 WL 241823, at *5, n.7 (waiving exhaustion where the petitioner "demonstrate[d] the irreparable harm that would result from wrongful detention, which may result given the lengthy time it takes to have an appeal decided."); Y.S.G. v. Andrews, No. 2:25-CV-1884-SCR, 2025 WL 2979309, at *7 (E.D. Cal. Oct. 22, 2025) (same). Respondents have not rebutted that estimate.  For these reasons, the exhaustion of administrative remedies is deemed waived in this case.  See Hernandez, 872 F.3d at 988–89 (affirming district court decision to waive exhaustion requirement in constitutional challenge to detention hearings); see also Mau v. Chertoff, 562 F.Supp.2d 1107, 1113–14 (S.D. Cal. 2008) (finding administrative exhaustion did not preclude a motion to enforce the district court's prior order because the BIA did not have authority to enforce the federal court's judgment).

### LEGAL STANDARDS

A district court has continuing jurisdiction to enforce its judgments.  See Hook v. State of Ariz., Dep't of Corr., 972 F.2d 1012, 1014 (9th Cir. 1992); see also Judulang v. Chertoff, 562 F.Supp.2d 1119, 1126 (S.D.Cal.2008) ("[H]abeas courts are empowered to make an assessment concerning compliance with their mandates.").  In the context of immigration detention, the judges of this judicial district have generally reviewed motions to enforce judgments under the standard for enforcing injunctions.  See Idiev v. Warden of Golden State Annex Det. Facility, No. 1:25-CV-01030-SKO (HC), 2026 WL 760218, at *2 (E.D. Cal. Mar. 18, 2026).

The party seeking to enforce the injunction has the burden of showing by clear and convincing evidence that the enjoined party violated a specific provision of the court's order.  Kia

7

America, Inc. v. Rally Auto Group, Inc., Case No. 8:22-cv-00109-JVS-JDE, 2022 WL 17185011 at *2 (C.D. Cal. Oct. 20, 2022) (citing FTC v. Affordable Media, 179 F.3d 1228, 1239 (9th Cir. 1999)).  The language in an injunction should be clear such that ordinary persons will know "precisely" what action is proscribed in order to provide sufficient notice to the party being enjoined.  Clark v. Coye, 60 F.3d 600, 604 (9th Cir. 1995). "[A]ll ambiguities are resolved in favor of the person [or entity] subject to the injunction." United States v. Holtzman, 762 F.2d 720, 726 (9th Cir. 1985).

As noted above, the undersigned construes this action as seeking to enforce Judge Calabretta's order in Ji v. Noem, et al., 2026 WL 485287, that Petitioner receive a "constitutionally adequate bond hearing" before an IJ.  "Thus, the Court's analysis here is grounded in the legal standard for reviewing IJ detention determinations." Kumar, 2026 WL 983129, at *2; see also Hinostroza Velasquez, 2026 WL 1622903, at *2 (same where the petitioner challenged the bond determination in a new § 2241 petition).  In constitutional challenges to an IJ's detention determination, a habeas court generally reviews mixed questions of fact and law under an "abuse of discretion" standard.  Martinez v. Clark, 124 F.4th 775, 785 (9th Cir. 2024).  "[A]buse of discretion" review does not involve "reweigh[ing] evidence[,]" but rather determining whether the IJ "applied the correct legal standard." Id. (citation and quotations omitted).  In other words, "[i]n reviewing the IJ's determination, a district court['s] . . . review is limited to whether the IJ's decision 'reflects clear legal error or is unsupported by sufficient evidence.'" Quan v. Barr, No. 20-cv-08118-LB, 2021 WL 308610 at *4 (N.D. Cal. 2021) (quoting Hilario Pankim v. Barr, No. 20-CV-02941-JSC, 2020 WL 2542022, at *8 (N.D. Cal. May 19, 2020) (internal citation and quotation omitted)).

Incorporating the two standard-of-review doctrines discussed above, the undersigned next determines whether petitioner has shown clearly and convincingly that the IJ erred in a way prohibited by the Court's order in the underlying habeas action.  The undersigned will also determine whether Petitioner has shown clearly and convincingly that the IJ abused her discretion in determining that he is a danger and flight risk by clear and convincing evidence.

////

**ANALYSIS**

**I.      Review of IJ's Bond Determination**

"To determine whether a [noncitizen] is a danger to the community or a risk of flight, an IJ weighs nine factors under BIA precedent." Martinez, 124 F.4th at 783 (citing Matter of Guerra, 24 I. & N. Dec. 37). "The nine factors an IJ 'may' consider 'include any or all of the following:' (1) whether the [noncitizen] has a fixed address in the United States; (2) the [noncitizen's] length of residence in the United States; (3) the [noncitizen's] family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the [noncitizen's] employment history; (5) the [noncitizen's] record of appearance in court; (6) the [noncitizen's] criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the [noncitizen's] history of immigration violations; (8) any attempts by the [noncitizen] to flee prosecution or otherwise escape from authorities; and (9) the [noncitizen's] manner of entry to the United States." Id.

The clear and convincing standard requires the government to present evidence that establishes "an abiding conviction that the truth of its factual contentions at issue are highly probable." Colorado v. New Mexico, 467 U.S. 310, 316 (1984) (internal citation and quotation marks omitted); see Mondaca-Vega v. Lynch, 808 F.3d 413, 422 (9th Cir. 2015). This is only the case where "the material it offered instantly tilted the evidentiary scales in the affirmative when weighed against the evidence . . . offered in opposition." Colorado, 467 U.S. at 316. When reviewing a bond decision pursuant to a habeas petition, absent any "red flags," the district court should assume that the IJ applied the standard that it announced in its bond memorandum review of the immigration judge's bond decision. Martinez, 124 F.4th at 785. With these frameworks in mind, the Court now turns to the IJ's bond decision in Petitioner's case.[4]

---

[4] The undersigned will not entertain Petitioner's arguments on reply that his re-detention violated due process from inception. Judge Calabretta thoroughly considered this claim in the original petition and determined due process warranted a post-deprivation hearing, not immediate release. "No . . . district judge shall be required to entertain an application for a writ of habeas corpus to inquire into the detention of a person pursuant to a judgment of a court of the United States if it appears that the legality of such detention has been determined by a judge or court of the United States on a prior application for a writ of habeas corpus[.]" 28 U.S.C. § 2244(a). Nor will the

## A. Dangerousness

As to Petitioner's dangerousness, the IJ abused her discretion by failing to meaningfully apply the clear and convincing standard and by committing other legal error integral to the proper implementation of that standard in this context. The government presented no evidence regarding the factual circumstances of Petitioner's arrests (arrest/police reports, etc.) that would reasonably show his release would threaten the community. After citing the government's sparse record evidence concerning only the existence Petitioner's arrests (i.e., the FBI "rap sheet"), the IJ noted Petitioner had offered evidence that no charges were filed after his most recent arrest in July 2025. However, the IJ then determined that Petitioner's evidence did not explain "*why* the district attorney declined to file charges," leaving her to "speculate as to whether the district attorney's decision . . . relates to [Petitioner's] factual guilt or innocence[.]" ECF No. 1-1 at 37 (emphasis in original).

In making these latter points, "the IJ impermissibly shifted the burden onto petitioner to show he was not dangerous . . . instead of maintaining the burden on respondents, as required by the [Court's] order." Y.S.G., 2025 WL 2979309, at *10. The IJ went on to cite her discretion to consider the "specific circumstances" of Petitioner's conduct (see ECF No. 1-1 at 38, citing Matter of Siniauskas, 27 I. & N. Dec. 207, 208–09 (BIA 2018)), but the government did not offer any factual details regarding Petitioner's conduct at all. The IJ in effect assumed Petitioner was a danger based on the alleged underlying offense alone and while rejecting his photographic and other evidence that he was the victim in the July 2025 incident.

The undersigned by no means suggests that Petitioner's arrests should be disregarded. But while IJs "are not limited to considering *only* criminal convictions in assessing whether an alien is a danger to the community," Matter of Guerra, 24 I. & N. Dec. at 38 (emphasis in original), any other evidence considered, including evidence of arrests that did not result in conviction, must be "probative and specific." Id. at 40-41; see also Vera-Perez v. Garland, No. 20-73247, 2022 WL 883742, at *1 (9th Cir. Mar. 24, 2022) (holding IJ and BIA did not err in

undersigned consider Petitioner's claim, raised for the first time on reply, that his detention is unconstitutionally prolonged. Petitioner may raise this claim in a new petition.

considering police reports from the petitioner's arrest for corporal injury of a spouse in denying application for adjustment of status).  The IJ's failure to engage with the specific, factual circumstances of the arrests at all demonstrates a misapplication of the heightened clear and convincing burden.  Accordingly, the IJ's failure to hold the government to its burden was error.

**B.  Flight Risk**

The IJ also erred in finding Petitioner to be a flight risk by clear and convincing evidence due to the unlikelihood of success on his asylum, withholding of removal, and CAT applications, and the fact Petitioner entered the country "unlawfully and relatively recently[.]"  ECF No. 1-1 at 39.  The IJ relied on Matter of R-A-V-P-, 27 I. & N. Dec. 803, 807 (BIA 2020), where an IJ determined that, as to flight risk, the noncitizen did not demonstrate a sufficient likelihood that he would be granted asylum.  The BIA affirmed, finding that the noncitizen's "limited avenue for relief, combined with his other minimal ties to the United States," supported the IJ's finding of flight risk.  Id.

R-A-V-P is materially distinguishable in that it involved a generic, § 1226(a) bond hearing in which the noncitizen bore the burden "to establish that he would not present a significant risk of flight if he is released on a monetary bond."  Matter of R-A-V-P-, 27 I. & N. Dec. at 803.  A probabilistic evaluation of Petitioner's future likelihood of immigration relief is not sufficient to establish flight risk under the clear and convincing evidence analysis.  Kumar, 2026 WL 983129, at *3 ("[A]t a minimum, it cannot be said that the limited availability of relief is evidence of flight that remotely approaches the clear and convincing standard the IJ purported to apply.").  Under clear and convincing standard, "an IJ cannot simply presume that unresolved claims are 'speculative' and indicative of flight risk, absent the Government making a specific showing that the nature or strength of the claims make the noncitizen unlikely to appear at future court proceedings."  N.A. v. Warden, Adelanto Det. Facility, No. 5:25-CV-03007-MBK, 2026 WL 1045196, at *9 (C.D. Cal. Apr. 15, 2026).

Further, other than stating that she has "consider[ed] all of the evidence in the record," the IJ does not explain *why* Petitioner's speculative immigration relief and manner of entry constitute clear and convincing evidence of flight risk.  The undersigned finds this to be a glaring omission

considering that the IJ *credited* Petitioner's ties to the country (including the statements of his potential sponsor) and the government put forth no evidence of noncompliance with Petitioner's terms of release.[5] "An agency acts contrary to the law when it gives mere lip service or verbal commendation of a standard but then fails to abide the standard in its reasoning and decision." Nat. Res. Def. Council, Inc. v. Pritzker, 828 F.3d 1125, 1135 (9th Cir. 2016) (citation omitted). Accordingly, the undersigned finds that the IJ violated the Court's prior order in failing to properly apply the clear and convincing standard.

**II.      Remedy**

Having determined that the IJ's decision did not comply with the clear and convincing standard mandated by Judge Calabretta's order, the remaining issue is what remedy should be ordered. Given that Judge Calabretta determined that due process required a post-deprivation hearing, the undersigned does not believe it would be appropriate to order petitioner unconditionally released. See S.E. v. Noem, No. 1:26-CV-00356-DAD-SCR, 2026 WL 836327, at *2 (E.D. Cal. Mar. 26, 2026) (finding that release would exceed the scope of the court's preliminary injunction requiring a bond hearing). Rather, the undersigned recommends Petitioner receive the alternative relief of a new bond hearing within seven days at which Respondents bear the burden of proof by clear and convincing evidence.

**CONCLUSION**

Accordingly, IT IS HEREBY RECOMMENDED that:

1.      Petitioner Yueming Ji's (A# 220-546-175) petition for writ of habeas corpus be GRANTED.

2.      Within seven (7) days of this Order, Respondents shall afford Petitioner a new, constitutionally adequate bond hearing before an Immigration Judge. The Government shall bear the burden of establishing, by clear and convincing evidence, that Petitioner poses a danger to the community or risk of flight, and Petitioner shall be allowed to have counsel present.

---

[5] The government's evidence submitted here reflects that Petitioner has complied with the conditions of release and in fact was arrested on October 2, 2025, at a routine check-in required under his Order of Release on Recognizance. ECF No. 7-2 (Form I-213).

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **seven days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs.  See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: June 15, 2026

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE

13